INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY ET AL. V. LUZ COY MORIN.

Decided February 3, 1909.

**1.—Evidence—Location of Street.**

In an action against a railroad company for damages for personal injuries inflicted in a street of a city by collision with one of defendant's trains, the testimony of a witness that the tracks of the defendant were in a certain street, was not subject to the objections that it was a conclusion of the witness, was secondary evidence, and that the records of the city were the best evidence as to the boundaries of the street. The location of the commonly used streets of a city or public roads of a county can be testified to by any one who has knowledge of the matter.

**2.—Evidence—Leading Question.**

The following question was addressed to a witness: "What's in the road-way there opposite where she (plaintiff) fell?" to which the witness answered, "It is very bad." Held, the question was not subject to the objection that it was leading.

### 3.—Evidence not Hearsay.

Testimony of a witness as to the location of a railroad track in a street, considered, and held not subject to the objection that the witness was not testifying from his own knowledge.

### 4.—Same—Location of Street.

The maps and records of a city are not necessarily the best evidence of the actual location of the streets on the ground; they only serve as guides to the location. Testimony of city engineer as to the width of a street in a city, considered, and held competent although it did not appear that he was present when the original lines were established.

### 5.—Trial—Improper Argument.

An appeal to the jury by counsel for plaintiff in a damage suit to apply the golden rule in behalf of plaintiff in arriving at their verdict, held, harmless error, if error at all, in view of the fact that the argument was withdrawn by counsel and the jury was instructed by the court to disregard it.

### 6.—Personal Injury—Railroad in Street—Customary Negligence.

In an action against a railroad company for damages for personal injuries caused by backing its train over plaintiff in the street of a city, evidence of negligence considered, and held sufficient to support a verdict against the defendant; and the fact that the negligent acts were customary with defendant was no defense in the absence of proof that plaintiff knew of the custom.

Appeal from the Thirty-seventh Judicial District, Bexar County. Tried below before Hon. E. Dwyer.

*King & Morris* and *Hicks & Hicks,* for appellant.—The location of a railroad track with reference to a street necessarily involves the question of the location of its line, and a statement of a witness to the effect that the track is about the middle of the street is merely the opinion or conclusion of the witness, and is not admissible in evidence, where the evidence fails to show that the said witness surveyed the lines of the street or saw the same surveyed or had some original knowledge of the true line, or that there are sidewalks or curb lines or other physical objects on the ground to mark the same. Schunior v. Russell, 83 Texas, 94; Robinson v. Douthit, 64 Texas, 101; Bolton v. Lann, 16 Texas, 112; Stewart v. Carleton, 31 Mich., 270; 2 Ency. of Evidence, p. 720.

The maps and records of the city are the best evidence, and testimony in reference to the width of the street by a witness who shows no knowledge of the original survey is secondary evidence. Boon v. Hunter, 62 Texas, 589; Welder v. Carroll, 29 Texas, 333; Houston & T. C. Ry. v. Bowie, 21 S. W., 304.

Where the evidence shows that the location of a railway track on which appellee was struck with reference to a street line is in dispute, a statement of appellee that when struck she was on or in the street, is a conclusion, and is improper where there is no evidence of any physical objects to show the lines of the street, and there is no evidence that she knew where the original or true lines of the street were.

It is improper for the court, in the presence and hearing of the jury, to ask a witness a leading question over the objection of the defendant, tending to influence the jury and cause them to attach undue

weight to the testimony of such witness. Freiberg v. Beach H. & S. J. Co., 63 Texas, 455; Smith v. Dunnam, 29 S. W., 432.

Where the undisputed testimony shows that appellee might ·have walked with safety along the portion of the street used by the public, she was guilty of negligence as a matter of law in using the railroad track when there is no adequate reason given therefor. Railway Co. v. Matthews, 93 S. W., 1068; St. Louis & S. F. Ry. v. Ferrell, 105 S. W., 263.

A person going upon a railroad track, even though laid in the street, is required to use reasonable care before going thereon in front of a string of cars, to see whether or not said cars are liable to be moved. International & G. N. R. Co. v. De Ollos, 76 S. W., 222; St. Louis & S. F. Ry. v. Ferrell, 105 S. W., 263.

*H. C. Carter* and *Perry J. Lewis,* for appellee.

FLY, ASSOCIATE JUSTICE.—In the District Court appellee obtained a verdict and judgment against appellant in the sum of $10,000 as damages arising from personal injuries inflicted on her through the negligence of the railroad company. She alleged that December 29, 1907, while she was walking along South Salado Street in the city of San Antonio, which was occupied by a long line of freight cars belonging to the railroad company which blocked the street so that appellee was compelled to walk northward along the street in order to get across the railroad tracks, and as she got to the end of the line of cars and walked on and along the track the cars were, without warning or signal, moved along the track, and struck appellee with such force as to knock her down and cause her serious, painful and permanent injuries. It was alleged that the railroad company was in the hands of a receiver and he was made a party to the suit, but we denominate the railroad company appellant herein.

The evidence shows that the tracks of appellant run along South Salado Street, which is a public street in the city of San Antonio,· and on the morning of December 29, 1907, appellee walked along a string of box cars that were stationary in the street mentioned, and when she got to the end of the line of cars she stepped on the track to avoid the water in the streets, and as she did so the cars were moved against her, striking her on the head, knocking her down and crushing her left leg so that it had to be amputated below the knee. She did not see nor hear any engine and no bell was rung or whistle blown. She did not cross over the track to San Luiz Street because that street was blocked by cars. Appellee swore: "The car was standing still and I stepped in front of it and near it, but can't state exactly the distance. The car started with a sudden start or jerk, hit me, knocked me down and ran over me. As soon as I put my foot in front of it, it struck me just as soon as I put my foot in front of the car."

Appellee was struck on the head with such violence that since that time the right ear has discharged a fluid denominated "cerebral fluid" because it comes from the brain, and is caused by a fracture of the skull. Dr. Braunagel swore that such a fluid would be discharged from no other cause, and stated: "In such a case, infection always

takes place and an obstruction to the flow, and that may cause death in a very few hours and cause destruction of the bone." That testimony was not controverted.

The first assignment of error assails the action of the court in permitting Joe Morin to testify that the tracks of appellant ·were in Salado Street. The grounds of objection to the testimony were that it was a conclusion of the witness, was secondary evidence, the records of the city being the best evidence. The assignment is without merit. Appellee was not endeavoring to establish the boundaries of Salado Street. Any witness conversant with the established streets of a city can testify as to whether a certain occurrence took place in a street or not. It would be a singular rule of evidence that would require a survey of a street in order to. determine whether any matter or occurrence took place on a street, in an alley or on a public square. The witness was not called on to fix the exact lines of the street, as would be the case in a boundary suit, but was giving the general position of the street. The location of the commonly used streets of a city or public roads of a county can be testified to by any witness who has knowledge of the matter. Even though this had been a boundary suit, any ·one who knew could testify as to the location of the lines. A boundary suit is rarely tried in which such testimony is not admitted. The witness in this case gave his reasons for stating that the railroad tracks were in the street, and the jury was authorized to hear his testimony and determine its weight. The witness swore to the use of the street before the railroad was built and since. Such evidence has been held sufficient to establish the location of a public road. (Click v. Lamar County, 79 Texas, 121.) The street was surveyed in 1849, and the witness knew its location long prior to the time when the railroad was built. Giraud, the city engineer, swore that the west track was 16 or 17 feet from the east line of Salado Street, and said further: "The I. & G. N. R. R. track is on Salado Street. I made surveys and ran lines there this morning."

The second assignment of error is based on the action of the court in permitting appellee to ask Magdeline Morin, "What's in the roadway there opposite where she fell?" Witness answered: "It is very bad." The question was objected to as leading. The question did not suggest any answer, and what it had a tendency to lead to is not apparent unless it was that there was some object in the road. It could not have led to anything unless it was some object in the street, and surely not to an answer as to the condition of the roadway, such as was given by the witness.

The third assignment of error complains of appellee being allowed to swear that she was walking near the track on or toward Salado Street, because it was a conclusion of· the witness and secondary evidence. The assignment is. overruled.

The witness Giraud, who was the city engineer, was testifying as to the location of Salado Street, and some of his evidence was objected to on the ground that he was not testifying from his own knowledge. The witness had already stated that he was testifying to matters known by him, and when the objection was interposed that the evidence was a conclusion of the witness and secondary, the court said:

"I will overrule the objection as far as it goes to what he knows of his own knowledge," and then said to the witness: "You are testifying to what you know of your own knowledge?" The witness answered in the affirmative, and then counsel for appellee said: "Now you can testify, if you know, what is the width of that street opposite the gas works, if you know what it is of your own knowledge." The witness answered: "Fifty-five feet, six inches, twenty varas. The west track of the I. & G. N. R. R. is on the east side of Salado Street in the block between Durango and Matamoras Streets." The court again said: "If you know it of your own knowledge, go ahead." And the witness answered: "I know it of my own knowledge. The west track is on the east side of Salado Street. It is about sixteen or seventeen feet from the east line of Salado Street." Again the court interposed: "You are still speaking of your own knowledge?" The quotations show how carefully the trial judge confined the testimony to matters arising from actual knowledge of the witness, and conclusively demonstrate that there is no ground, not only for the third assignment of error but also for the fourth, fifth and sixth assignments of error, which are based on the warnings by the court to the witness to testify from his knowledge of the location and width of the street.

The seventh, eighth and ninth assignments of error complain of the evidence of the city engineer as to the width of Salado Street, because he was not present when the original lines were surveyed. Such a rule of evidence would prevent proof of the location of any street in San Antonio. The maps and records of the city of San Antonio were not the best evidence of the actual location of the street on the ground, but only served for the purpose for which the engineer swore that he used them, as a guide to such location. Field notes do not locate lines on the ground; they merely furnish data by which surveyors can locate them. The witness stated how he arrived at his knowledge of the location of the street, and the language of the court clearly did not lead him into claiming that he knew what he was testifying about. The circumstances themselves proclaimed that he was testifying from knowledge gained by an application of information obtained from the maps and records of the city of San Antonio. It is hardly probable that the testimony of the surveyor who originally surveyed Salado Street would be accessible at that time. If appellant desired to test the accuracy of the engineer's testimony as to his means of knowledge of the true position of the street, it could and should have done so on cross-examination.

Counsel for appellee in his closing argument to the jury said: "I ask you in considering plaintiff's injuries to consider them as you would have a jury to do if your mother was in her place; do unto others as you would have others do unto you; this is the golden rule, and it is a good rule of conduct to follow." Whether it be reprehensible or not for counsel to insist on a jury acting under the rule invoked need not be considered, although the trial judge could not see the wrong in it, for counsel voluntarily withdrew the remarks and the court then instructed the jury not to consider them. Neither the size of the verdict nor any other circumstance shows that any prejudice or passion was aroused by the remarks. Appellee was quite old—be-

tween sixty and seventy, or between seventy and eighty—but she was not too old to suffer excruciatingly from the wounds she received through the negligence of appellant, and ten thousand dollars for such suffering and a fractured skull and amputated limb, do not evince prejudice or passion.

Our conclusions of fact dispose of the eleventh assignment of error which complains because a verdict was not instructed for appellant, and of the thirteenth, fourteenth and fifteenth assignments of error which assert a failure of the evidence to fix appellant's liability, and of excess in the verdict. The evidence clearly showed that the tracks were in the street and that no attempt was made to warn those on the street that the cars were to be moved, and no one was on the cars to watch. The evidence offered by appellant tended to show that it was the custom of appellant not to give warnings of the movements of trains in that locality, and not to have any one on the cars to look out for people on the track. Appellee knew nothing of such custom. The judgment is affirmed.

*Affirmed.*

Writ of error refused.